FILED
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

FEB 28 2022


DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) NO. 1:22-00002 |
| v. | ) |
| | ) 18 U.S.C. § 371 |
| [1] KETURA ODEN | ) 26 U.S.C. § 7202 |
| [2] CONSUELA ODEN | ) |

# INDICTMENT

THE GRAND JURY CHARGES:

At all times material to this Indictment:

## INTRODUCTION

1. **KETURA ODEN** and **CONSUELA ODEN** were residents of Spring Hill, Tennessee, in the Middle District of Tennessee. **KETURA ODEN** and **CONSUELA ODEN** were sisters.

2. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury responsible for enforcing and administering the tax laws of the United States and collecting taxes owed to the Treasury of the United States.

3. An IRS Form W2 was a form that employers were required to file with the Social Security Administration for each employee with exceptions for very limited situations that may occur if the employer was not required to withhold any income tax, social security tax, or Medicare tax and paid less than $600 of wages to an employee in any given taxable year.

4. The Federal Insurance Contributions Act ("FICA") required employers to deduct a stated percentage from its employees' wages for Social Security and Medicare and to pay those amounts to the IRS. At all times relevant to this Indictment, employers were required to withhold

6.2% of employees' wages for Social Security and 1.45% of employees' wages for Medicare (collectively, the "employee's portion of FICA taxes").

5. Pursuant to Federal regulation, employers were also required to withhold and pay over to the IRS stated amounts that represented the employees' federal income tax liabilities.

6. Additionally, employers were required to pay to the IRS a "matching" portion of FICA wages that was equal to the employees' share of FICA taxes (the "employer's portion of FICA taxes").

7. On an annual and quarterly basis, employers were also required to file IRS Forms 940 and 941, annual and quarterly employer tax returns, with the IRS to report the wages the employer paid to employees to calculate Federal Unemployment Tax Act taxes and the employer and employee portions of FICA taxes.

8. The Trust Fund Recovery Penalty ("TRFP") is a penalty that the IRS assesses against any "responsible person" who has a duty to collect and pay to the IRS an employee's federal income and employment taxes, and who willfully fails to collect or pay those taxes. An individual does not need to be an owner or officer of a company to be a "responsible person" who the IRS deems personally liable for withholding and paying the income and employment taxes. More than one individual can be a "responsible person;" if more than one individual is a "responsible person," each "responsible person" has a duty to withhold and pay over federal income and employment taxes to the IRS.

9. In 2004, **KETURA ODEN** opened Complete Caregivers & More, Inc. ("C1"), a home healthcare business in the Middle District of Tennessee. **KETURA ODEN** knew that she was required to withhold federal income taxes and FICA taxes from her employees' wages. In fact, she did withhold those taxes, and she filed Forms 941 with the IRS. However, beginning in

2

Case 1:22-cr-00002   Document 3   Filed 02/28/22   Page 2 of 12 PageID #: 4

2006, **KETURA ODEN** paid only a portion of the taxes that were due to the IRS for 2006 and 2007.

10. In May 2007, the IRS initiated a collection action to recover C1's unpaid taxes.

11. In September 2007, **KETURA ODEN** opened Complete Care Choice ("C2") and began operating C1 under that name.

12. In October 2007, **KETURA ODEN** entered into an installment agreement with the IRS to pay C1's delinquent tax liabilities in the amount of $610,461 for portions of tax years 2006 and 2007. In March 2008, **KETURA ODEN** defaulted on that agreement by failing to make the payments as agreed in the installment agreement.

13. In May 2008, **KETURA ODEN**, through a power of attorney, told an IRS Revenue Officer ("RO") that she would be closing C1. In June 2008, **KETURA ODEN** told the IRS RO that she had opened Complete Care Choice ("C2") and caused C2 to purchase the assets of C1. **KETURA ODEN** falsely told the IRS RO that C2 was a new company, separate from C1. In fact, C2 was merely a continuation of C1. **KETURA ODEN** continued to operate the same business with the same employees, clients, customers, and vendors.

14. In September 2008, the IRS closed the collection action on C1 based on **KETURA ODEN**'s statement that C1 was closed. However, the IRS continued to seek the TFRP from **KETURA ODEN** as the person responsible for paying C1's withheld federal income taxes and the employee's portion of FICA taxes.

15. In November 2008, **KETURA ODEN** signed an IRS Form 2751, on which she agreed to the assessment and recovery of the TFRP against her in the amount of $300,527 related to C1.

16. Between December 2007 and September 2009, **KETURA ODEN** was compliant with her duty to collect and pay employment taxes and federal income taxes for C2. She timely filed Forms 941 and 940 and paid the quarterly tax payments due in full. However, starting in September 2009, **KETURA ODEN** continued to file the Forms 940 and 941 and withheld employment taxes and federal income taxes from her employees' paychecks, but she once again began paying only a portion of those taxes to the IRS.

17. In February 2011, the IRS initiated a collection action against C2 for delinquent employment taxes for 2009 and 2010. In May 2012, **KETURA ODEN** entered into another installment agreement with the IRS on behalf of C2 and agreed to pay delinquent employment taxes of over $1.48 million for portions of 2009 through 2012.

18. The IRS closed its collection action on C2, but continued to seek the TFRP from **KETURA ODEN** as the person responsible for paying those taxes.

19. From May 2012 through December 2012, **KETURA ODEN** made payments on the installment agreement for C2's delinquent taxes. Beginning in January 2013, **KETURA ODEN** stopped making the installment payments.

20. **KETURA ODEN** continued to withhold federal income taxes and federal employment taxes from her employees' paychecks, and to file Forms 940 and 941 for C2. However, **KETURA ODEN** failed to pay over all of those taxes to the IRS.

21. In March 2013, the IRS re-opened the collection action for C2.

22. In December 2014, the IRS notified **KETURA ODEN** that if C2 did not become compliant with its federal tax obligations within 30 days, the IRS may recommend **KETURA ODEN** for civil injunction or criminal prosecution.

4

23. Two months later, on February 5, 2015, **KETURA ODEN** opened her business under another new name, Complete Home Care Services of TN, Inc. ("C3"), and registered the business in the State of Tennessee. **CONSUELA ODEN** was listed as the owner of C3. However, C3 continued to operate just as C2 had done, with the same employees, clients, customers, and vendors as C2. **KETURA ODEN** continued to run the business.

24. **CONSUELA ODEN** handled payroll for C3, and she knew the financial condition of the business.

25. A few days after opening C3, **KETURA ODEN**, through her power of attorney, told the IRS RO that she was closing C2, and that the business had little to no assets. **KETURA ODEN** falsely told the IRS that she was going to work at another home health agency as a wage-earning employee. **KETURA ODEN** also falsely told the IRS that C3 provided different services than C2. **KETURA ODEN** further told the IRS the business was owned by her sister, **CONSUELA ODEN**, and that **CONSUELA ODEN** was current with her taxes.

26. Although **KETURA ODEN** continued to operate C3, **CONSUELA ODEN** held herself out to the IRS and to others be the owner of that business. **CONSUELA ODEN** and **KETURA ODEN** signed or caused to be signed the Forms 941 for C3, some of which represented that **CONSUELA ODEN** was the owner of the business.

27. **CONSUELA ODEN** and **KETURA ODEN** withheld employment taxes and federal income taxes from the employees' paychecks, but paid only a portion of those taxes to the IRS.

28. In January 2017, the IRS initiated a collection action on C3 for unpaid employment taxes for 2015 and 2016. On April 5, 2017, an IRS RO interviewed **CONSUELA ODEN** about

5

the unpaid taxes, and **CONSUELA ODEN** held herself out to be the owner of the business. The IRS RO told **CONSUELA ODEN** that C3 owed a tax debt to the IRS of over $1 million.

29. On April 16, 2017, **KETURA ODEN**, through a power of attorney, sent a fax to the IRS RO attaching some signed documents. On the fax cover sheet, the power of attorney stated that both sisters acknowledged that they were responsible parties for trust fund purposes. However, the fax also contained a document signed by **KETURA ODEN** in which she denied that she was responsible for withholding and paying over employment taxes for C3, and claimed that **CONSUELA ODEN** owned C3 and was responsible for filing the business's Forms 941.

30. Also attached to the fax was a form signed by **CONSUELA ODEN**, in which she stated that she was responsible for withholding and paying over employment taxes for C3, as well as preparing, filing, authorizing, and filing tax returns for C3.

31. In October 2017, **CONSUELA ODEN** filed a 2016 Form 1040, personal income tax return, listing C3 as a Schedule E business and claiming losses from the business. Those losses reduced her tax liability and caused **CONSUELA ODEN** to receive a tax refund in the amount of $14,534, which the IRS applied against the TFRP assessed against her.

32. In June 2018, a Special Agent from the IRS-Criminal Investigation Division contacted both **KETURA ODEN** and **CONSUELA ODEN** about the unpaid taxes. The Special Agent notified both **KETURA ODEN** and **CONSUELA ODEN** that she was conducting a criminal investigation related to the unpaid tax liability of C3. **KETURA ODEN** and **CONSUELA ODEN** continued to maintain that **CONSUELA ODEN** was the owner of C3.

33. The IRS Special Agent lawfully issued a summons to **CONSUELA ODEN** that required her to provide the IRS with records related to C3. **CONSUELA ODEN** did not comply with the summons. A federal district court judge in the Middle District of Tennessee issued an

order for **CONSUELA ODEN** to show cause why she had not complied with the summons. **CONSUELA ODEN** eventually provided some records in response to the summons.

## COUNT ONE

THE GRAND JURY FURTHER CHARGES:

34. From on or about February 2015 and continuing thereafter up to and including the date of this Indictment, in the Middle District of Tennessee and elsewhere, **KETURA ODEN** and **CONSUELA ODEN** did willfully and knowingly conspire, combine, confederate, and agree with each other, and with other individuals both known and unknown to the Grand Jury, to defraud the United States for the purpose of impeding, impairing, obstructing, and defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of revenue: to wit, federal income taxes and employment taxes.

### Manner and Means

35. The manner and means by which the conspiracy was sought to be accomplished included, among others, the following:

   a. **KETURA ODEN** opened her business, C2, under a new name, C3. **KETURA ODEN** put C3 in the name of her sister, **CONSUELA ODEN**.

   b. **KETURA ODEN** falsely told the IRS that she was closing C2 and was going to work at C3, which she claimed was a separate business that she did not own. She did this to mislead the IRS into believing that C2 was no longer in operation and to avoid the IRS assessing and collecting taxes for C2. In fact, C3 continued to operate just as C2 had operated, with the same employees, clients, customers, and vendors as C2. **KETURA ODEN** continued to run the business just as she had before.

c. **CONSUELA ODEN** and **KETURA ODEN** falsely held **CONSUELA ODEN** out to the IRS and others as the owner of C3. **CONSUELA ODEN** and **KETURA ODEN** claimed **CONSUELA ODEN** was the person responsible for withholding and paying over federal income taxes and federal employment taxes from C3's employees. In fact, **KETURA ODEN** continued to operate the business just as before, and remained responsible for collecting and withholding the employment taxes.

d. **CONSUELA ODEN** and **KETURA ODEN** signed and caused to be signed Forms 941 that made it appear as though **CONSUELA ODEN** was owner.

e. **CONSUELA ODEN** and **KETURA ODEN** continued to make payments to vendors, employees, and themselves, knowing that the tax liability was outstanding.

Overt Acts

36. In furtherance of the conspiracy, and to effect the objects thereof, the following overt acts, among others, were committed in the Middle District of Tennessee and elsewhere:

a. On or about February 5, 2015, **KETURA ODEN** opened her business under a new name, C3, listed her sister, **CONSUELA ODEN**, as the owner of the business, and registered the business in the State of Tennessee, all in order to mislead the IRS into believing that C2 was no longer in operation.

b. On or about February 9, 2015, **KETURA ODEN** falsely told the IRS that she was closing C2, that the business had little to no assets, and that she was going to work for her sister, **CONSUELA ODEN**, who purportedly owned C3.

c. On or about May 28, 2015, **KETURA ODEN** gave the IRS Revenue Officer a paystub from C3 as purported proof that she was only an employee, rather than the owner of

8

the business, so that the IRS would believe C2 was closed, and would accordingly close C2's collection action as uncollectable.

d. On or about the dates listed below, each of which constitutes an overt act, **KETURA ODEN** and **CONSUELA ODEN** signed and caused to be signed, under the penalties of perjury, a Form 941, Employer's Quarterly Federal Tax Return for the quarters listed below:

| Date Return was Due or Filed | Quarter | Quarterly Tax Payment Due (Trust Fund Portion) per Form 941 |
|---|---|---|
| 04/11/2016 | 2015 Q2 | $ 80,959.96 |
| 04/11/2016 | 2015 Q3 | $ 105,256.39 |
| 04/11/2016 | 2015 Q4 | $ 108,676.05 |
| 09/12/2016 | 2016 Q1 | $ 82,354.99 |
| 09/12/2016 | 2016 Q2 | $ 53,659.95 |
| 02/03/2017 | 2016 Q3 | $ 49,460.97 |
| 02/03/2017 | 2016 Q4 | $ 42,759.34 |
| 04/30/2017 | 2017 Q1 | $ 49,646.84 |
| 07/31/2017 | 2017 Q2 | $ 40,868.96 |
| 10/31/2017 | 2017 Q3 | $ 42,782.99 |
| 05/21/2018 | 2017 Q4 | $ 27,663.17 |

e. On or about April 5, 2017, in an interview with an IRS RO, **CONSUELA ODEN** held herself out to be the owner of the business and told the IRS RO that the reason the taxes were unpaid was because insurance companies had been slow to reimburse C3 for services rendered.

f. On April 16, 2017, **KETURA ODEN**, through a power of attorney, sent a fax to the IRS RO attaching some signed documents. On the fax cover sheet, the power of attorney stated that both sisters acknowledged that they were responsible parties for trust fund purposes. However, the fax also contained a document signed by **KETURA ODEN** in which she denied that she was responsible for withholding and paying over employment taxes for C3, and

9

claimed that **CONSUELA ODEN** owned C3 and was responsible for filing the business's Forms 941.

g. On April 16, 2017, **CONSUELA ODEN** through a power of attorney, sent a fax to the IRS RO in which she stated that she was responsible for withholding and paying over employment taxes for C3, as well as preparing, filing, authorizing, and filing tax returns for C3.

h. In October 2017, **CONSUELA ODEN** filed a 2016 Form 1040, personal income tax return, listing C3 as a Schedule E business and claiming losses from the business. Those losses reduced her tax liability and caused **CONSUELA ODEN** to receive a tax refund in the amount of approximately $14,534.

All in violation of Section 371, Title 18, United States Code.

<u>COUNTS TWO THROUGH THIRTEEN</u>

THE GRAND JURY FURTHER CHARGES:

37. **KETURA ODEN**, a resident of Nashville, Tennessee, operated a business under the names Complete Care Choice ("C2") and Complete Home Care Services of TN, Inc. ("C3") with its principal place of business in Spring Hill, Tennessee. C2 and C3 were required to make deposits of the payroll taxes to the Internal Revenue Service on a periodic basis. In addition, C2 and C3 were required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of social security and Medicare taxes due, and the total tax deposits.

38. As the operator of C2 and C3, **KETURA ODEN** was a "responsible person," that is, she had a duty to collect, truthfully account for, and pay over C2 and C3's payroll taxes.

39. As the owner of C3, **CONSUELA ODEN**, a resident of Nashville, Tennessee, was also a "responsible person," that is, she had a duty to collect, truthfully account for, and pay over C3's payroll taxes.

40. During the quarters listed in the counts below, on or about the dates listed in those counts, in the Middle District of Tennessee and elsewhere, **KETURA ODEN** and **CONSUELA ODEN**, as identified in each count in the table below, did willfully fail to truthfully account for and pay over to the IRS all of the employees' federal income taxes and the employees' share of FICA taxes due and owing to the United States of America for the quarters ending in the counts listed below.

| Count | Defendant | Quarter | Date Form 941 Was Received | Federal Income Tax Withholding | Employee Portion of FICA Taxes | Unpaid Employment Taxes After Payments Made to the IRS |
|---|---|---|---|---|---|---|
| 2 | KETURA ODEN | 2015 Q1 | 5/21/2015 | $71,683.43 | $58,869.82 | $12,261.40 |
| 3 | KETURA ODEN and CONSUELA ODEN | 2015 Q2 | 4/11/2016 | $43,141.28 | $37,818.68 | $80,959.96 |
| 4 | KETURA ODEN and CONSUELA ODEN | 2015 Q3 | 4/11/2016 | $56,437.97 | $48,818.42 | $81,829.02 |
| 5 | KETURA ODEN and CONSUELA ODEN | 2015 Q4 | 4/11/2016 | $61,139.56 | $47,536.49 | $99,023.32 |
| 6 | KETURA ODEN and CONSUELA ODEN | 2016 Q1 | 9/12/2016 | $45,193.71 | $37,161.28 | $82,354.99 |
| 7 | KETURA ODEN and CONSUELA ODEN | 2016 Q2 | 9/12/2016 | $29,641.56 | $24,018.39 | $43,439.59 |
| 8 | KETURA ODEN and CONSUELA ODEN | 2016 Q3 | 2/3/2017 | $27,897.86 | $21,563.11 | $49,460.97 |
| 9 | KETURA ODEN and CONSUELA ODEN | 2016 Q4 | 2/3/2017 | $24,203.11 | $18,556.23 | $42,759.34 |
| 10 | KETURA ODEN | 2017 Q1 | 4/30/2017 | $28,384.82 | $21,262.02 | $49,646.84 |

| | | | | | | |
|---|---|---|---|---|---|---|
| | and CONSUELA ODEN | | | | | |
| 11 | KETURA ODEN and CONSUELA ODEN | 2017 Q2 | 7/31/2017 | $ 23,116.99 | $ 17,751.97 | $ 40,868.96 |
| 12 | KETURA ODEN and CONSUELA ODEN | 2017 Q3 | 10/31/2017 | $ 24,782.30 | $ 18,000.69 | $ 42,782.99 |
| 13 | KETURA ODEN and CONSUELA ODEN | 2017 Q4 | 05/21/2018 | $ 15,105.24 | $ 12,557.93 | $ 27,663.17 |

All in violation of Title 26, United States Code, Section 7202.



A TRUE BILL

FOREPERSON

MARK H. WILDASIN
UNITED STATES ATTORNEY

KATHRYN W. BOOTH
ASSISTANT UNITED STATES ATTORNEY